UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

CARLOS VALENCIA,


                              Petitioner,

                                                                08 Civ. 00298 (KMK)(PED)

       -   against -                                            REPORT AND
                                                                RECOMMENDATION
WILLIAM BROWN, Superintendent,
Eastern Correctional Facility


                              Respondent.

---------------------------------------------------------------X

TO:    THE HONORABLE KENNETH M. KARAS
       UNITED STATES DISTRICT JUDGE

       Petitioner Carlos Valencia ("Petitioner"), appearing pro se and incarcerated at the Eastern

Correctional Facility, brings the instant habeas corpus petition pursuant to 28 U.S.C. § 2254,

challenging his July 27, 1998 conviction and his April 5, 2005 re-sentencing, both from the New

York State Supreme Court, Sullivan County.  (Amended Habeas Petition ("Am. Pet.") ¶¶ 1, 3,

12(a)(6).)[1]  Petitioner was convicted of the criminal sale of a controlled substance in the first

degree in violation of New York Penal Law § 220.43(1), a Class A-1 felony (the "Drug

Conviction"), and conspiracy in the second degree in violation of New York Penal Law §

105.15, a Class B felony (the "Conspiracy Conviction").  (Id. ¶ 5.)  Petitioner was sentenced to

imprisonment of 25 years to life on the Drug Conviction, and 8 1/3 years to 25 years

imprisonment on the Conspiracy Conviction.  (Id. ¶ 12(a)(6).)  Petitioner was subsequently re-

_____

[1] The instant motion comes before the Court pursuant to an order of reference dated March 18,
2008, which was reassigned to the undersigned on January 12, 2009 (Docket # 16).

sentenced to a determinate term of 10 years with respect to the Drug Conviction.  (Am. Pet. ¶ 12(a)(6).)

Petitioner seeks habeas relief, claiming that his conviction was obtained (1) as a result of prosecutorial misconduct; (2) in deprivation of his due process rights based upon an erroneous jury charge; and (3) against the weight of the evidence.  Petitioner further claims (4) that his sentence was excessive and illegal; (5) that his re-sentencing was excessive; and (6) that the interest of justice requires modification of his sentence.  (Am. Pet. ¶ 13.)  For the reasons set forth below, I conclude, and respectfully recommend that Your Honor should conclude, that this petition for a writ of habeas corpus should be DENIED.

## I.    BACKGROUND

### A.    The Crime

Evidence presented at trial showed that Detective Art Claudio ("Claudio"), a police officer with the Mount Vernon, New York Police Department, worked together with Olivio Avila ("Avila"), a confidential informant, to investigate Petitioner and another man, Jamie Grajales ("Grajales"), regarding their suspected sale of narcotics.  June 3, 1998 Transcript pp. 74, 80, 87, 95.  Through a series of meetings attended by Claudio, Avila, and Grajales between November 1997 and January 5, 1998, Grajales agreed to sell Claudio, on January 6, 1998, five kilos of cocaine.    June 3, 1998 Transcript pp. 87, 93, 97-98, 108, 114.  During these meetings, Grajales stated that Petitioner – whom Grajales referred to as "El Negro" – was his partner.  June 3, 1998 Transcript p. 95.  Following the January 5, 1998 meeting, Grajales sent a "page" to Claudio's beeper from Petitioner's home telephone number.  June 3, 1998 Transcript p. 116.

2

When Claudio returned the page to Petitioner's home telephone, Grajales informed Claudio that the five kilos of cocaine would cost $91,000. June 3, 1998 Transcript p. 118.

On January 6, 1998, the cocaine sale was scheduled to occur in a grocery store parking lot in Monticello, NY, but Grajales demanded that it instead take place at Petitioner's business, a discotheque in Monticello called Papa Rumba. June 3, 1998 Transcript pp. 120-121. Due to security concerns on the part of Claudio, he was not willing to go through with the deal at Papa Rumba, and the deal was therefore aborted. June 3, 1998 Transcript pp. 120-121.

Following the aborted deal, on February 3, 1998, Claudio spoke directly with Petitioner by telephone. June 3, 1998 Transcript p. 151. During the call, Petitioner stated that Claudio and Petitioner needed to discuss the failed cocaine deal of January 6, 1998, and arranged a subsequent meeting for that purpose at the China Buffet Restaurant in Monticello, NY. June 3, 1998 Transcript pp. 153-155. The meeting occurred on February 3, 1998. June 3, 1998 Transcript p. 155. Claudio testified that, during this meeting, he and Petitioner discussed the failed cocaine deal of January 6, 1998, and then made arrangements for another deal to occur at the China Buffet at some point in the future. June 3, 1998 Transcript pp. 163-164. Claudio further testified that Petitioner told him about another deal he had recently done at the Papa Rumba whereby he sold five kilos of cocaine to a man from Buffalo (the "Buffalo Sale"). June 3, 1998 Transcript pp. 156-157.

Claudio testified that, on February 9, 1998, he confirmed with Grajales that the deal he had discussed with Petitioner would go forward on February 10, 1998 at the China Buffet. June 3, 1998 Transcript p. 165. As per the terms of that deal, Claudio would purchase two kilos of cocaine for $21,500 per kilo, or a total of $43,000. June 3, 1998 Transcript pp. 163, 165.

3

Grajales showed up at the China Buffet on February 10, 1998 with one kilo of cocaine, and indicated that his partner, "El Negro," would soon be showing up with the second kilo.    June 3, 1998 Transcript pp.168-169.  Grajales and Petitioner were subsequently arrested.

    **B.**    <u>**The Trial**</u>

       Following their arrests, both Petitioner and Grajales were indicted on one count of criminal sale of a controlled substance in the first degree (N.Y. Penal Law § 220.43(1)) and conspiracy in the second degree (N.Y. Penal Law § 105.15).  (Aff. in Opp'n ¶ 6.)  Petitioner and Grajales were tried jointly in a jury trial before the County Court of the State of New York, Sullivan County (Labuda, J.).  (<u>Id.</u> ¶ 4, n2.)

       Prior to trial, on March 26, 1998, Petitioner's trial counsel filed a notice of motion regarding various pre-trial matters, including a request for a Ventimiglia hearing in the event the prosecution intended to offer evidence of Petitioner's prior bad acts.  (Appellate Brief dated March 4, 1999, Ex. A7.)  The district attorney responded by submitting an affidavit indicating the prosecution's "intention to allege and establish," as part of its case in chief, the defendants' "sale of other quantities of cocaine besides that which was sold on February 10, 1998." (Appellant's Brief and Appx. Dated March 4, 1999, pg. 2.)  Subsequently, Petitioner "was granted a Ventimiglia hearing," but "proceeded to trial without the hearing having been conducted." <u>People v. Valencia</u>, 263 A.D.2d 874, 877 (N.Y. App. Div. 1999).

       During trial, Claudio and Avila testified about Petitioner's statements regarding the Buffalo Sale.  June 3, 1998 Transcript pp. 156-157.  Petitioner's trial counsel objected on the grounds that Petitioner had previously requested, but not received, a Ventimiglia hearing

4

regarding the testimony in question.  June 3, 1998 Transcript p.157.  The trial court overruled

that objection.  June 3, 1998 Transcript p. 161.

On the issue of reasonable doubt, the court charged the jury with the New York pattern

jury instructions, which include the following language: "Therefore, the first duty of each juror

is to consider and weigh all the evidence in this case and decide which you believe is credible

and worthy of your consideration." June 8, 1998 Transcript pp.12-13.  Following this language,

the jury instruction continued:  "The next duty of each juror is to determine whether the juror has

in fact a reasonable doubt of the defendant's guilt as I have defined that term to you."  June 8,

1998 Transcript p. 13.  In addition to charging the jury with the New York Pattern Jury

Instruction, the court included an additional charge on the issue of reasonable doubt: "[I]f you

find the defendant not guilty, then the presumption of innocence with which he started the trial

has ripened into an established fact." June 8, 1998 Transcript p. 10.  Counsel objected to this

charge on the basis that the existence of reasonable doubt does not prove the Petitioner's

innocence, but merely that the prosecution had failed to prove Petitioner's guilt.  June 8, 1998

Transcript pp. 64-65.

On June 8, 1998, the jury returned a verdict finding Petitioner and Grajales guilty on both

counts of the indictment. (Aff. in Opp'n ¶ 8.)  On July 27, 1998, the court sentenced Petitioner to

a prison term of twenty-five (25) years to life for the Drug Conviction, and a term of eight and

one-third (8 1/3) to twenty-five (25) years for the Conspiracy Conviction, running consecutively.

(Id. ¶ 8.)

### C.   Post-Trial Proceedings

#### 1.   *State Court Proceedings*

On or around March 4, 1999, Petitioner filed an appeal in the New York State Appellate Division for the Third Department, arguing (1) that admission of testimony regarding the Buffalo Sale constituted prosecutorial misconduct; (2) that Petitioner was denied due process on account of an erroneous jury charge regarding the issue of reasonable doubt; (3) that Petitioner's conviction was against the weight of the evidence; and (4) that the Petitioner's sentence was excessive and illegal.  (Appellant's Brief and Appx. Dated March 4, 1999.)  The New York State Appellate Division for the Third Department affirmed Petitioner's conviction on July 29, 1999, and the New York State Court of Appeals denied leave to appeal on October 7, 1999.  People v. Valencia, 263 A.D.2d 874 (N.Y. App. Div. July 29, 1999), leave denied, 722 N.E.2d 513 (N.Y. 1999).

On April 5, 2005, the trial court re-sentenced Petitioner with respect to the Drug Conviction pursuant to the Drug Law Reform Act of 2004, N.Y. Penal Law § 70.71(2)(b)(i), reducing his sentence from an indeterminate term of 25 years to life to a determinate term of 10 years' imprisonment.  (Am. Pet. ¶ 12(a)(6).)  The sentence applicable to the Conspiracy Conviction remained unchanged.  (Id.)  Petitioner appealed his re-sentencing to the New York State Appellate Division for the Third Department, arguing (1) that the re-sentencing is excessive; and (2) that the sentence should be modified in the interest of justice.  (Appellate Brief and Appx., Appeal No. 16268.)  On June 1, 2006, the New York State Appellate Division for the Third Department affirmed the re-sentencing, and the New York Court of Appeals denied

leave to appeal on October 30, 2006.  People v. Valencia, 16268, 2006 NY Slip Op 4199, 2

(N.Y. App. Div. June 1, 2006), leave denied, 857 N.E.2d 1146 (N.Y. 2006).[2]

### 2. *Federal Court Proceedings*

On November 9, 2007, the Court's Pro Se Office received petitioner's original habeas

petition, which set forth six grounds for relief:  (1) prosecutorial misconduct; (2) deprivation of

due process based upon an erroneous jury charge; (3) convictions entered against the weight of

the evidence; (4) excessive and illegal sentence; (5) excessive re-sentence; and (6) interest of

justice requires modification of the sentence.  (Original Habeas Petition ("Pet.") ¶ 13.)[3]

On January 14, 2008, the Honorable Hon. Kimba M. Wood, then-Chief United States

District Judge, entered an order directing Petitioner to file an amended habeas petition within

sixty (60) days detailing, inter alia:  (1) the timeliness of the first four grounds raised in the

original petition and stating the reason(s) for his delay in filing the petition; and (2) exhaustion

of the fifth and six grounds raised in the original petition.  (Docket # 4.)

On March 10, 2008, the Court's Pro Se Office received a copy of Petitioner's amended

habeas petition, in which he asserted that the original petition was timely on account of

Petitioner's April 2005 re-sentencing, and indicated that he had exhausted of his fifth and sixth

grounds for relief.  (Am. Pet. ¶ 14.)

---

[2] Copies of unreported cases cited herein are being mailed to Petitioner.  See Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009).

[3] The grounds for relief set forth in the habeas petition and amended habeas petition are identical to the grounds for relief and arguments set forth in the appellate briefs submitted by Petitioner in the New York State courts.  Therefore, my analysis of the Petition tracks the arguments set forth in Petitioner's two state court appellate briefs.

On June 13, 2008, Respondent filed its opposition to the amended habeas petition,

arguing (1) that the first four grounds for relief are time-barred; (2) that the reasons given by the

Appellate Division in denying Petitioner's direct appeal warrant dismissal of the petition; (3) that

Petitioner's reduced sentence is neither illegal nor excessive, and therefore does not violate the

Eighth Amendment; and (4) that this Court lacks authority to reduce Petitioner's modified

sentence.  (Affirmation in Opposition to Habeas Petition ("Opp'n Aff.") at ¶ 16.)  (Docket # 11.)

## II.     DISCUSSION

### A.     Standard of Review

"Habeas review is an extraordinary remedy."  Bousley v. United States, 523 U.S. 614,

621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  To be granted a writ of habeas

corpus from a federal district court, a petitioner must fully and carefully comply with the

provisions of the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254

("AEDPA").  Under the AEDPA, all state remedies must be exhausted before a federal court

may consider a state prisoner's petition for a writ of habeas corpus.  28 U.S.C. § 2254(b)(1)(A);

see also Picard v. Connor, 404 U.S. 270, 275 (1971).  In the interests of comity and expeditious

federal review, states should have the first opportunity to address and correct alleged violations

of a state prisoner's federal rights.  See Coleman v. Thompson, 501 U.S. 722, 731 (1991); see

also Daye v. Attorney General, 696 F.2d 186, 190-91 (2d Cir. 1982).  In pertinent part, the

exhaustion requirement of the federal habeas corpus statute states:

> (b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted unless it appears that
>
> > (A)    the applicant has exhausted the remedies available in the courts of the State;
> > or

> (B)(i)   there is an absence of available State corrective process; or
>
>    (ii)   circumstances exist that render such process ineffective to protect the rights of the applicant; . . .
>
> (b)(3)(c)   An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he [or she] has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. §§ 2254(b)(1) and (b)(3)(3).

The Second Circuit has adopted a two-stage inquiry to determine whether the exhaustion doctrine has been satisfied.  See Klein v. Harris, 667 F.2d 274, 282 (1981).  First, the petitioner must have "fairly presented" his or her federal constitutional claim to the appropriate state courts.  Picard v. Connor, 404 U.S. at 275-76.  "A claim has been 'fairly presented' if the state courts are apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.'"  Jones v. Vacco, 126 F.3d 408, 413 (2d Cir. 1997) (quoting Daye, 696 F.2d at 191).  In other words, the claim must have been presented in a way that is "likely to alert the court to [its] federal nature."  Daye, 696 F.2d at 192.  The fair presentation requirement is satisfied if the state court brief contains phrases such as "under the Due Process Clause" or "under the Constitution" that point to the petitioner's reliance on the United States Constitution as his or her legal basis for relief.  Klein, 667 F.2d at 282 (internal citations omitted).

A claim may be considered "presented" even if the federal grounds were not explicitly asserted before the state courts if the petitioner, in asserting his or her claim before the state court, did one of the following:  (1) relied on pertinent federal cases that employ constitutional analysis, (2) relied on pertinent state cases that apply constitutional analysis in like fact situations, (3) asserted his or her claim in terms so particular as to call to mind specific

constitutionally-protected rights; or (4) alleged a fact pattern that falls within the mainstream of constitutional litigation. See Daye, 696 F.2d at 194.

Second, having fairly presented his or her federal constitutional claim to the appropriate state court and having been denied relief, the petitioner must appeal his or her conviction to the highest state court. Klein, 667 F.2d at 282. Where a petitioner fails to present his or her federal constitutional claim to the highest state court, the claim cannot be considered exhausted. Id. (citing Williams v. Greco, 442 F. Supp. 831, 833 (S.D.N.Y.1977)). There is, however, another avenue available for exhaustion purposes. A petitioner who has failed to exhaust state remedies by pursuing a direct appeal may satisfy the exhaustion requirement by utilizing available state methods for collaterally attacking his or her state conviction. See Klein, 667 F.2d at 282; see also Johnson v. Metz, 609 F.2d 1052, 1055-56 (2d Cir. 1979) (instructing habeas petitioner who did not fairly present claim in the course of his direct appeals in New York state courts to proceed by filing a motion to vacate judgment pursuant to New York CPL § 440.10). If collateral relief is denied, the petitioner may satisfy the exhaustion requirement by employing the state appellate procedures available for review of such denial. Id. at 282-83. After a petitioner has met the exhaustion requirements, a federal district court may generally hear "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court" only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA also requires a habeas petitioner to file his or her petition within one year following a state court conviction. 28 U.S.C. § 2244(d)(1). The one year statute of limitations begins to run from the latest date on whichever one of the following events occurs:

10

(A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

**B.      The Petition is Timely**

The first four grounds for relief set forth in the amended petition are: (1) prosecutorial misconduct; (2) deprivation of due process based upon an erroneous jury charge; (3) convictions entered against the weight of the evidence; and (4) excessive and illegal sentence. (Am. Pet. ¶ 13.) Respondent argues that each of these grounds is time-barred under the AEDPA. (Opp'n Memo., at 15-16.) I disagree.

Here, the AEDPA limitations period runs from the date Petitioner's re-sentencing became final. "Final judgment in a criminal case means sentence. The sentence is the judgment." Burton v. Stewart, 549 U.S. 147, 156 (U.S. 2007). Therefore, "a habeas petitioner's 'limitations period d[oes] not begin until both his conviction and sentence 'bec[o]me final . . . .'" Walker v. Perlman, 556 F. Supp. 2d 259, 262 (S.D.N.Y. 2008); see also Ferreira v. Sec'y, Dep't of Corr., 494 F.3d 1286 (11th Cir. 2007) (habeas petition filed more than five years after a state prisoner was convicted of a crime, but less than two months after a corrected sentence imposed

on resentencing became final, was timely even though habeas petition challenged only the underlying conviction).

Thus, where a party is convicted, sentenced, and then subsequently re-sentenced, the AEDPA's statute of limitations does not begin to run with respect to any part of that party's conviction or sentencing until the re-sentencing becomes final.  Walker v. Perlman, 556 F. Supp. 2d 259, at 263 ("The 'judgment' that triggered the one-year statute of limitations became final when the corrected sentence pursuant to which prisoner was in custody became final, thereby making both his conviction and sentence final.").  The judgment for which Petitioner seeks habeas relief became final on January 28, 2008, one year after expiration of Petitioner's time to seek a writ of certiorari with the United States Supreme Court regarding his appeal from the re-sentencing.  Because Petitioner filed his original habeas petition on November 9, 2007, prior to the deadline for seeking habeas relief, the petition is timely.  Id.

### C.  Petitioner Does Not State a Ground For Habeas Relief Based Upon Prosecutorial Misconduct

Petitioner's first ground for relief – namely, that prosecutorial misconduct occurred when the prosecution introduced evidence of the Buffalo Sale (Am. Pet. ¶ 13) – does not state a ground for habeas relief.  This claim stems from the fact that Petitioner's trial counsel requested, and was granted, a Ventimiglia hearing[4] prior to trial, but nevertheless "proceeded to trial without the hearing having been conducted."  People v. Valencia, 263 A.D.2d 874, 877 (N.Y. App. Div.

---

[4] Jones v. Artuz, 96 Fed. Appx. 742, 743 (2d Cir. 2004) ("[A] Ventimiglia hearing is held to determine whether evidence of uncharged crimes is admissible as direct evidence.").

12

1999).  Petitioner argues that, in light of Petitioner's unfulfilled request for a Ventimiglia

hearing, it was prosecutorial misconduct for the prosecution to introduce evidence of the Buffalo

Sale.  (Appellant's Brief and Appx. Dated March 4, 1999, pp. 2-5.)

As an initial matter, these allegations do not state a ground for habeas relief, as a

Ventimiglia hearing does not derive from federal constitutional principles, and failure to hold

such a hearing is not a violation of the United States Constitution or federal law.  Pena v.

Fischer, 00 Civ. 5984 (HB) (MHD), 2003 U.S. Dist. LEXIS 7240 (S.D.N.Y. Apr. 28, 2003)

(claim stemming from failure to conduct Ventimiglia hearing not "cognizable for federal habeas

review"); accord  Johnson v. Mazzuca, No 04-CV-5246 (JFB), 2006 U.S. Dist. LEXIS 57376,

*25 n2 (E.D.N.Y. Aug. 16, 2006) (failure to conduct Ventimiglia hearing "not cognizable under

habeas review" because "the right to a Ventimiglia hearing is a matter of state law").

Moreover, it is well-settled that a habeas court's scope of review as to claims of

prosecutorial misconduct is limited to violations of due process.  Floyd v. Meachum, 907 F.2d

347, 353 (2d Cir. 1990) ("The appropriate standard of review for a claim of prosecutorial

misconduct on a writ of habeas corpus is the narrow one of due process, and not the broad

exercise of supervisory power.").  Additionally, a petitioner seeking habeas relief on the grounds

of prosecutorial misconduct must demonstrate that he suffered actual prejudice as a result of the

prosecutor's misconduct.  Bentley v. Scully, 41 F.3d 818, 823 (2d Cir. 1994).

Here, Petitioner has not shown that the alleged prosecutorial misconduct at issue

constituted a violation of his due process rights, nor does he make any attempt to demonstrate

how the absence of a Ventimiglia hearing caused him any prejudice – particularly in light of the

fact that Petitioner's trial counsel did in fact have an opportunity to object to the evidence in

question.  Moreover, the Appellate Division held that by proceeding to trial without a

Ventimiglia hearing, even though one had been granted, Petitioner waived his right to the

hearing.  People v. Valencia, 263 A.D.2d 874, 877 (N.Y. App. Div. 1999).  This application of

waiver principles constitutes an independent and adequate state ground that precludes federal

habeas relief on this issue.  It is well-settled that "'federal habeas review is foreclosed when a

state court has expressly relied on a procedural default as an independent and adequate state

ground . . . .'"  Jones v. Duncan, 162 F. Supp. 2d 204, 210 (S.D.N.Y. 2001).  As Petitioner has

not attempted to show cause for the default, there is no basis for further review of this claim in

federal court.

### D.   Petitioner Does Not State a Ground for Habeas Relief Based Upon Erroneous Jury Charge

As his second ground for relief, Petitioner claims that an erroneous jury charge on the

issue of reasonable doubt denied him both due process of law and the right to trial by jury.  (Am.

Pet. ¶ 13.)  As to the issue of reasonable doubt, the jury charge Petitioner challenges is identical,

in pertinent part, to New York's pattern jury instruction 1 CJI (NY) 6.20.  (Appellant's Brief and

Appx. Date March 4, 1999, pp. 6-9.)  Petitioner does not take issue with the substance of the jury

instruction at issue, but merely complains about the sequence of certain parts of the instruction.

Specifically, Petitioner points out that the jury instruction first indicates that the jurors' "first

duty" was "to consider and weigh all the evidence in the case and decide which you believe is

credible and worthy of consideration."  (Id., p. 6.)  The instruction then states that the "next duty

of each juror is to determine whether the juror has in fact a reasonable doubt of the defendant's

guilt as I have defined that term for you."  (Id., p. 7.)  Because the jury instructions were given in

this order, Petitioner claims that they "negate[ ] or relegate[ ] to a secondary position" the prosecution's burden of presenting "sufficient credible evidence to convict." (Id., p. 7.)

Petitioner also takes issue with the portion of the jury instruction dealing with the presumption of innocence, which stated:  "[I]f you find the defendant not guilty, then the presumption of innocence with which he started the trial has ripened into an established fact." (Id., p. 6.)  According to Petitioner, the jury instruction "indicated to the jury that if they had a reasonable doubt that they would have found the defendants innocent – rather than that the prosecution had not proved them guilty, a much different standard." (Id., pp. 8-9.)

In order to obtain a writ of habeas corpus from a federal court based upon a claim of erroneous jury instructions, "the petitioner must establish that the instruction at issue violated a right guaranteed him by federal law." Sams v. Walker, 18 F.3d 167, 171 (2d Cir. 1994). "Petitioner bears a great burden of establishing that an alleged erroneous jury instruction 'so infected the entire trial that the resulting conviction violates due process.'" Johnson v. Greiner, 97 Civ. 2993 (JES)(KNF), 2000 U.S. Dist. LEXIS 17033, *19 (S.D.N.Y. Nov. 27, 2000), quoting Henderson v. Kibbe, 431 U.S. 145, 154 (1977).  "The petitioner must establish 'not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional right]." Estelle v. McGuire, 502 U.S. 62, 72 (1991).  Moreover, in examining the constitutionality of a jury charge, "the Court must examine the overall charge, and not just the complained-of portion. That is, errors in the jury instruction can be offset when considered in context of the instruction as a whole." Harris v. Hollins, 95 Civ. 4376 (HB), 1997 U.S. Dist. LEXIS 15910, *11-12 (S.D.N.Y. Sept. 30, 1997).

15

As to the order in which the instructions were given, Petitioner does not cite a single federal case in which the sequence of a jury charge was held to violate due process. Nor has this Court's research uncovered such a case. To the contrary, "[t]here is no due process violation from the order in which jury instructions are given." Gillette v. Greiner, 76 F. Supp. 2d 363, 371 (S.D.N.Y. 1999). I can discern no constitutional error arising from the sequence of the instructions given by the trial court.

Moreover, a review of the trial court's instructions to the jury in the instant case, taken as a whole, indicates that the court did not improperly instruct the jury as to the burden of proof. In particular, the court's burden of proof charge, delivered subsequent to the introductory portion containing the phrase "presumption of innocence . . . has ripened into an established fact" about which Petitioner complains, properly explained to the jury the consequences of any failure by the prosecution to establish its case beyond a reasonable doubt:

>        Now, the defendants in this case have entered pleas of not guilty to the crimes charged in the indictment. A plea of not guilty is a denial of every allegation of the indictment. Under our system of law, the People have the burden of proving to your satisfaction beyond a reasonable doubt every material allegation in the indictment and the essential elements required to prove them.

>        To put this another way, ladies and gentlemen, a defendant is never required to prove anything. On the contrary, the People have accused the defendants of the crimes which are charged in this indictment. They have the burden of proving the defendants guilty beyond a reasonable doubt. The People have the burden of proving the defendant's guilt as to every fact and every element essential to conviction. This burden never shifts. It remains on the People and the presumption of innocence remains with every defendant from the beginning of the trial until such time when during final deliberations the jury may be convinced that the People have proved the defendant's guilt beyond a reasonable doubt.

>        Therefore, if in your minds during you final deliberations the People have not borne their burden of proof and the presumption of innocence has not been overcome by proof which convinces you beyond a reasonable doubt, then of

16

> course you must find the defendant not guilty.  If in your minds during your final
> deliberations you are satisfied from all the evidence that the People have borne
> their burden of proof and that the presumption of innocence has been overcome
> by evidence which convinces you beyond a reasonable doubt, then you must find
> the defendants guilty.

June 8, 1998 Transcript pp. 13-15.  Therefore, Petitioner has not shown that the introductory

phrase about which he complains deprived him of some constitutional right.

     In sum, Petitioner has failed to show that the jury instructions at issue constitute error

rising to the level of a federal constitutional violation, and accordingly, this claim should be

denied.

    E.    **Petitioner Does Not State a Ground for Habeas Relief Based Upon the**
          **Weight of the Evidence**

     As his third ground for relief, Petitioner asserts that his conviction was against the weight

of the evidence.  (Am. Pet. ¶ 13.)

     "A claim that a conviction is against the weight of the evidence originates from New

York Criminal Procedure Law § 470.15(5), which permits an appellate court to reverse or

modify where it determines 'that a verdict of conviction resulting in a judgment was, in whole or

in part, against the weight of the evidence.'"  Peralta v. Bintz, 01 Civ. 5265 (LMM) (DF), 2001

U.S. Dist. LEXIS 25962, *12-14 (S.D.N.Y. July 16, 2001).  Attacks on a verdict based on the

weight of the evidence are different from those based on the legal sufficiency of the evidence.

Id.  "Specifically, the 'weight of the evidence' argument is a pure state law claim grounded in

New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on

federal due process principles."  Id.  As courts in this district have explained:

> To decide whether a verdict is supported by legally sufficient evidence, 'the court
> must determine whether there is any valid line of reasoning and permissible
> inferences which could lead a rational person to the conclusion reached by the

> jury on the basis of the evidence at trial and as a matter of law satisfy the proof
> and burden requirements for every element of the crime charged.'

Walton v. Ricks, 01 Civ. 5265 (LMM) (DF), 2002 U.S. Dist. LEXIS 25599 (S.D.N.Y. Mar. 19,

2002).

Petitioner never argued on direct appeal that the evidence submitted at trial was legally

insufficient to support the verdict.  Nor did he argue that the prosecution failed to prove any

element of the crime of which he was convicted.  On the contrary, Petitioner admitted on direct

appeal that "there was sufficient evidence to convict," but argued that "taking the proof in a light

most favorable to the prosecution, as the law requires, the convictions are against the weight of

the evidence."  (Appellant's Brief and Appx. Dated March 4, 1999, at 12.)  The Appellate

Division then rejected Petitioner's claim on the ground that the verdict entered against him was

not against the weight of the evidence.  People v. Valencia, 263 A.D.2d 874, 876 (N.Y. App.

Div. 1999) ("We first reject the contention that the jury's verdict finding defendant guilty of

criminal sale of a controlled substance in the first degree and conspiracy in the second degree

was against the weight of the evidence.").

In this Court, Petitioner has again raised only the state law issue of whether the weight of

the evidence supported his conviction. (Am. Pet. ¶ 13.) Yet, habeas corpus review is not

available where there is simply an error of state law. See 28 U.S.C. § 2254(a) (permitting federal

habeas corpus review only where the petitioner has alleged that he is in state custody in violation

of "the Constitution or a federal law or treaty"); see also Estelle v. McGuire, 502 U.S. 62, 68

(1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction

violated the Constitution, laws, or treaties of the United States.") (citations omitted).  Because

the "weight of the evidence" issue is not a cognizable federal issue, the claim should be

dismissed.  See, e.g., Kearse v. Artuz, No. 99 Civ. 2428 (TPG), 2000 U.S. Dist. LEXIS 12649

(S.D.N.Y. Sept. 5, 2000) (summarily dismissing challenge to verdict against the weight of the

evidence on the ground that "disagreement with a jury verdict about the weight of the evidence

is not grounds for federal habeas corpus relief").

**F.      Petitioner's Sentence and Re-Sentence Were Neither Excessive Nor Illegal**

As his fourth and fifth grounds for relief, Petitioner argues that his original sentence and

re-sentence were excessive and illegal.  (Am. Pet. ¶ 13.)  The Court liberally construes this claim

as being grounded in a violation of the Eighth Amendment to the United States Constitution's

prohibition against cruel and unusual punishment.  Triestman v. Fed. Bureau of Prisons, 470

F.3d 471, 474 (2d Cir. 2006) ("It is well established that the submissions of a pro se litigant must

be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'").

"An Eighth Amendment challenge to a sentence may not succeed unless a petitioner

alleges that the sentence was outside a prescribed statutory range." Mayen v. Artist, 06 Civ.

14261 (DC), 2008 U.S. Dist. LEXIS 41975, *10-11 (S.D.N.Y. May 23, 2008); see also Ross v.

Gavin, No. 95-2448, 1996 U.S. App. LEXIS 15358, *2-3 (2d Cir. June 25, 1996) ("[I]t is well

settled that 'no federal constitutional issue is presented where . . . the sentence is within the

range prescribed by state law.'").  Indeed, where the record reveals that "a sentence is within the

limitations set forth in the statute under which it is imposed, appellate review is at an end."

Mayen v. Artist, 06 Civ. 14261 (DC), 2008 U.S. Dist. LEXIS 41975, *10-11.  "Moreover, when

determining the constitutionality of a sentence, the habeas court should defer to state legislative

determinations regarding criminal penalties and to a trial court's discretion in sentencing

criminal defendants." Id.

19

Here, Petitioner does not allege that either his original sentence or his re-sentence fell outside the applicable statutory range.  Nor could he, as Petitioner was originally sentenced to imprisonment of 25 years to life on the Drug Conviction, and 8 1/3 years to 25 years imprisonment on the Conspiracy Conviction.  Because both sentences were within the statutory sentencing guidelines, N.Y. Penal Law § 70.00(2)(a)-(b), any  Eighth Amendment challenge to those sentences cannot succeed.  Id.

Similarly, Petitioner's re-sentencing fell within the statutory guidelines set forth in the Drug Law Reform Act of 2004, which authorizes determinate sentences of at least 8 years and not more than 20 years for class A-I felony drug offenses, such as the one for which Petitioner was convicted.  N.Y. Penal Law § 70.71(2)(b)(i).  Because the 10-year sentence received by Petitioner is within the statutory parameters set forth by the Drug Law Reform Act, no federal constitutional issue is presented.

Accordingly, Petitioner's fourth and fifth ground for relief should be denied.

### G.      The Court May Not Modify Petitioner's Sentence "In the Interest of Justice"

As his sixth and final ground for relief, Petitioner asks this Court to act "in the interest of justice" by modifying his sentence.   (Am. Pet. ¶ 13.)  28 U.S.C. 2254, however, does not authorize federal courts to grant habeas relief based upon the "interest of justice," but "only on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. 2254(a).  Because Petitioner has failed to identify any violation of the Constitution, federal law, or a federal treaty in connection with his re-sentencing, there is simply no basis for this Court to modify his sentence.  Id.

**III.**     **Conclusion**

For the reasons set forth above, I respectfully recommend that Petitioner's habeas petition be DENIED in its entirety.

**IV.**     **Notice**

Pursuant to 28 U.S.C. §636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) working days, from the date hereof to file written objections to this Report and Recommendation.  Fed. R. Civ. P. 6(a).  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Kenneth M. Karas, United States District Judge, at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Karas.

Dated:   October 25, 2010
         White Plains, N.Y.

Respectfully submitted,

PAUL E. DAVISON
UNITED STATES MAGISTRATE JUDGE

21

*Copies of this Report and Recommendation set to:*

The Honorable Kenneth M. Karas
United States District Judge
300 Quarropas Street
White Plains, New York 10601

**Carlos Valencia**
98-A-4551
East Correctional Facility
Box 338
Napanoch, NY 12458-0338
PRO SE

**Bonnie Mae Mitzner, Esq.**
The Sullivan County DA's Office
414 Broadway, Lhc Courthouse
Monticello, NY 12701